

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed March 27, 2007**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| NORMAL TIMOTHY HENDERSON and | § | CASE NO. 07-30694-SGJ-13 |
| LINDA HENDERSON, | § | |
| | § | |
| D E B T O R S. | § | |

**<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER
GRANTING MOTION FOR AN EXTENSION OF TIME TO COMPLETE PRE-
BANKRUPTCY CREDIT COUNSELING</u>**

This matter presents the following issues:

1.    First, whether Bankruptcy Code Section 109(h)(3)'s provisions describing (a) the requirement that an individual receive prepetition credit counseling in order to be eligible to file a bankruptcy case, and (b) the temporary exemption from that requirement, available for a maximum of 45 days postpetition, in the event that a court is satisfied that there were exigent circumstances and the debtor sought but was unable to obtain credit counseling prepetition, are plain and unambiguous;

2.    Second, if Section 109(h)(3)'s provisions are plain and

unambiguous, whether an individual's failure to meet Section 109(h)'s eligibility or exemption requirements mandates dismissal of the individual's case, or does a bankruptcy court have discretion to retain the case, despite technical ineligibility/noncompliance;

3.   Third, if the bankruptcy court does have discretion to retain the bankruptcy case, despite technical ineligibility/noncompliance, whether the present case justifies the court retaining the case and permitting a Section 109(h)(3) temporary exemption from the prepetition credit counseling requirement.

It is undisputed that these are core matters and that the court has jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157. The following constitutes the court's findings of fact and conclusions of law in connection with the Debtors' Motion for an Extension of Time to Complete Pre-Bankruptcy Credit Counseling. Where appropriate, a finding of fact that should more properly be regarded as a conclusion of law shall be regarded as such, and vice versa.

<u>FINDINGS OF FACT</u>

1.   Normal Timothy Henderson and Linda Henderson (the "Debtors" or "Hendersons"), husband and wife, jointly filed a Chapter 13 bankruptcy petition on February 5, 2007 (the "Petition Date").

2.   On February 6, 2007, two Certificates of Credit Counseling were filed in their case, seemingly indicating that each of the Debtors, at 8:05 a.m. on February 6, 2007, one day after the Petition Date, belatedly received the type of credit counseling contemplated by 11 U.S.C. §§ 109(h) and 111.  Section 109(h) specifically requires that, in order for an individual to be eligible to file a bankruptcy petition, such individual must have, "during the 180-day period preceding the date of the filing of the petition by such individual, received from an approved . . . credit counseling agency . . . . an individual or group briefing (including a briefing conducted by telephone or on the Internet)."  Thus, the Certificates of Credit Counseling appear to reflect a problem with the Hendersons' eligibility to file bankruptcy:  the Debtors did not receive credit counseling during the 180-day period *before* the Petition Date but, rather, immediately afterward.

3.   However, the Hendersons' tardiness problem is not indisputably fatal to the survival of their bankruptcy case. This is because Section 109(h) offers, for debtors in this district, two avenues for an individual to be eligible for bankruptcy relief even when he or she has not obtained prepetition credit counseling.[1]  One avenue is in a situation in

---

[1] There is actually a third avenue in some districts.  *See* 11 U.S.C. § 109(h)(2) (providing that the prepetition credit counseling requirement shall not apply to individuals residing in a district in

which a debtor is unable to complete credit counseling because of "incapacity, disability, or active military duty in a military combat zone" — the "permanent exemption" from the credit counseling requirement, as it is sometimes informally called. 11 U.S.C. § 109(h)(4). The permanent exemption is not applicable with regard to Mr. and Mrs. Henderson. The second avenue for one to be eligible for bankruptcy relief even when he or she has not obtained prepetition credit counseling is in a situation in which a debtor submits a "certification that — (i) describes exigent circumstances that merit a waiver of the [prepetition credit counseling requirement]; (ii) states that the debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services . . . during the 5-day period beginning on the date on which the debtor made that request; and (iii) is satisfactory to the court." This is sometimes informally referred to as the "temporary exemption" from the credit counseling requirement. 11 U.S.C. § 109(h)(3). It is referred to as a temporary exemption because in these circumstances, unlike with "incapacity, disability, or active military duty in a military combat zone," the exemption from the requirement of credit counseling only

---

which the United States Trustee determines that the approved credit counseling agencies for such district "are not reasonably able to provide adequate services . . . ."). This provision does not apply in the Northern District of Texas.

applies for a period equal to 30 days after the petition date, unless the court, for cause, orders an additional 15 days. 11 U.S.C. § 109(h)(3)(B). While not very precisely worded,[2] Section 109(h)(3)(B) appears to allow an individual who would otherwise be ineligible to file bankruptcy to nevertheless prosecute a bankruptcy case filed prior to receiving credit counseling if: (a) the requirements of Section 109(h)(3) set forth above are certified by the debtor (*i.e.,* there were exigent circumstances and requests by the debtor to obtain credit counseling but inability to nevertheless obtain it during a 5-day period after requesting it); and (b) the debtor belatedly obtains the credit counseling postpetition, within 30 days of the petition date, or within 45 days if a 15-day extension is granted by the court for cause.

---

[2] As will later be further addressed, Section 109(h) is arguably replete with imprecise language. Among other things, Section 109(h)(3) refers to both a "waiver" and "exemption" from credit counseling for up to 45 days, but it seems as though an *extension* of time to complete credit counseling is actually what is being addressed in Section 109(h)(3). *Accord In re Elmendorf, et al.,* 345 B.R. 486, 494-96 (Bankr. S.D.N.Y. 2006). Additionally, this court wonders why a temporary exemption (extension?), that operates to give an individual a window of time *post*petition to complete credit counseling, is even available, if the purpose of the credit counseling requirement is "to give consumers in financial distress an opportunity to learn about the consequences of bankruptcy—such as the potential devastating effect it can have on their credit rating—before they decide to file for bankruptcy relief." *In re Ginsberg,* 354 B.R. 644 (Bankr. E.D.N.Y. 2006); *In re Henderson*, 339 B.R. 34, 36-37 (Bankr. E.D.N.Y. 2006)(citing H.R. Rep. 109-31, pt. 1, at 18 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 104). "Under the bill, individuals with primarily consumer debts must receive notice of alternatives to bankruptcy relief before they file for bankruptcy . . .." H.R. Rep. 109-31(I), 2005 U.S.C.C.A.N. 88.

4. It appears that on February 6, 2007, the Debtors attempted to seek exoneration for their belated credit counseling, with their filing of a Motion for an Extension of Time to Complete Pre-Bankruptcy Credit Counseling (the "Motion for Temporary Waiver"). The Motion for Temporary Waiver was filed immediately after the filing of the Credit Counseling Certificates, purportedly showing that the Debtors had obtained credit counseling the day after the Petition Date. In the Motion for Temporary Waiver, the Debtors assert that the Debtors were "unable to complete the pre-bankruptcy credit counseling due to the unavailability of a credit counselor on February 5, 2007 after they decided that they had no other viable option to save their home from foreclosure scheduled February 6, 2007," and the Debtors requested one extra day to complete the credit counseling. The court, upon reviewing the Motion for Temporary Waiver, became troubled that the Debtors might not be in a position to avail themselves of the temporary waiver described in Section 109(h)(3). While an imminent foreclosure sale scheduled on the family home would generally, in this court's view, qualify as "exigent circumstances,"[3] the Hendersons did not file a

---

[3] "Exigent circumstances" are not defined in the Bankruptcy Code. Webster's New Collegiate Dictionary defines "exigent" as "requiring immediate aid or action." While reasonable minds may differ, and while a great majority of individual debtors may be facing imminent foreclosure on their homes on the date that they file bankruptcy, this court believes that foreclosure on a family home is a circumstance "requiring immediate aid or action" — particularly in the State of

"certification" regarding the exigent circumstances; equally important, the Debtors had not clearly represented that they *requested but were unable* to obtain credit counseling services during the 5-day period beginning on the date on which the Debtors made the request. *See* 11 U.S.C. § 109(h)(3)(A)(ii).[4] The Debtors merely mentioned an "unavailability of a credit counselor on" the Petition Date. Accordingly, this court believed it was necessary and appropriate to hear evidence on whether the Debtors met the test of Section 109(h)(3) and were eligible to avail themselves of the bankruptcy process.

5. Before the court had the opportunity to schedule a hearing on the Motion for Temporary Waiver, the Debtors obtained a hearing (on March 7, 2007) on another motion they filed in their case: the Debtors' Motion to Extend the Automatic Stay Beyond 30 Days, pursuant to Section 362(c)(3).[5] Mr. Henderson testified at the March 7th hearing. At such hearing, when Mr. Henderson was asked about the sequence of events surrounding the failure to obtain prepetition credit counseling, and when the

_____

Texas, where non-judicial foreclosure sales are permitted on very short notice to a borrower.

[4] This court sees similarly deficient requests for temporary waivers from credit counseling, pursuant to 11 U.S.C. § 109(h)(3), filed by debtors on a frequent basis.

[5] Mr. and Mrs. Henderson had a previous bankruptcy case that was dismissed in the year preceding this bankruptcy case. 11 U.S.C. § 362(c)(3)(A) and (B).

7

court expressed concern whether it was appropriate to extend the automatic stay pursuant to Section 362(c)(3) if the Debtors were not even eligible to be in bankruptcy in the first place, Mr. Henderson testified under oath that: (a) he had visited with his bankruptcy attorney on Saturday, February 3, 2007, in the face of a scheduled Tuesday, February 6, 2007, foreclosure sale on his home, (b) the Debtors and their attorney had prepared and signed bankruptcy paperwork anticipating that the Hendersons would file bankruptcy before the scheduled foreclosure sale, but that the Hendersons would get their credit counseling first, (c) Mr. Henderson had tried all weekend and all day Monday, February 5, 2007 to get the credit counseling over the Internet and could not get a connection with the one and only website address he had been given by his attorney, (d) Mr. Henderson had no phone number to call to try to obtain credit counseling by phone, and (e) the Hendersons' lawyer filed the petition on Monday, February 5, 2007, believing that the Hendersons had followed the prescribed game plan and had taken the credit counseling as planned over the weekend. Mr. Henderson further testified that he obtained the credit counseling as promptly as he could — as soon as he could finally get an Internet connection to the credit counseling website, which turned out to be at 8:05 a.m. the morning after his attorney filed bankruptcy for him and his wife.

6. The Hendersons' attorney corroborated Mr. Henderson's

8

testimony that her office had filed the case assuming the Hendersons had gotten the credit counseling prepetition as discussed at their Saturday meeting.  Debtors' counsel also indicated that her office had become aware that other debtors had experienced the same difficulty as Mr. Henderson, when trying to obtain credit counseling on the days leading up to the first Tuesday of the month (a.k.a. "Foreclosure Tuesday" in Texas) — suggesting that they may have had trouble getting through to do credit counseling, presumably because of a deluge of individuals trying to get credit counseling on the days leading up to scheduled foreclosure sales.

7.   One other noteworthy aspect of Mr. Henderson's testimony was that he testified that only he had done the Internet credit counseling on the day after the Petition Date, not his wife.  He specifically said that he thought he could do it for the both of them.

8.   At the conclusion of the March 7th hearing on the motion to extend the stay, the court found and ruled as follows:  (a) Mr. Henderson fell substantially within the parameters of Section 109(h)(3)(A), by swearing under oath, equivalent to a "certification," (i) as to what reasonably could be construed to be "exigent circumstances" — *i.e.,* an imminent foreclosure sale on the family home, absent the aid of the automatic stay of bankruptcy; and (ii) that he had essentially requested credit

counseling for roughly a 3-day period after first trying on February 3, 2007, and that he was unable to obtain it, due to Internet connection problems with the one and only credit counseling site his attorney had given him; (b) there had been a lack of communication between the Debtors and their attorney as of the time of the filing of the voluntary petition as to whether the Debtors had completed their credit counseling prepetition; (c) the court would, as to Mr. Henderson, refrain from dismissing the case, for lack of eligibility pursuant to Section 109(h),[6] and also would extend the automatic stay, pursuant to Section 362(c)(3), except with regard to one objecting vehicle lender (for reasons separately addressed on the record); and (d) with regard to Mrs. Henderson, the court expressed that it needed to hear testimony from her separately regarding her Section 109(h) eligibility in order to further extend the stay as to her.  The court granted a short-term interim extension of the stay as to Mrs. Henderson, but believed it was necessary to consider testimony from her regarding her attempts to obtain credit counseling prepetition and whether she had since obtained credit counseling.  The court asked her counsel for a specific certification from her in this regard and set the Motion for Temporary Waiver for a hearing on March 21, 2007.

---

[6] The Debtors' Motion for Temporary Waiver was technically not before the court on March 7, 2007.

9.   At the March 21, 2007 hearing on the Motion for
Temporary Waiver, Mrs. Henderson testified in a manner consistent
with her husband's earlier testimony (see paragraphs 5 and 7
above).  Specifically, she recounted his attempts to obtain
credit counseling February 3 through 6, 2007, but she likewise
admitted that she had not really participated personally in the
Internet credit counseling that Mr. Henderson was finally able to
obtain on the fourth day — at 8:05 a.m. Tuesday morning, February
6, 2007 — because she, unlike Mr. Henderson, had to get to work
by 8:30 a.m.  Mrs. Henderson and her counsel asked that she be
determined to have substantially met the standards of Section
109(h)(3)(A) (*i.e.,* exigent circumstances and sufficient attempts
at credit counseling prepetition) and be allowed the full 45 days
that Section 109(h)(3)(B) seems to allow for a debtor to obtain
postpetition credit counseling (where the debtor has otherwise
proven the Section 109(h)(3)(A) elements and "cause").  The
Debtors' counsel noted that the 45th day fell on March 22, 2007
(the day after the hearing on this matter).

## CONCLUSIONS OF LAW

A.    The court holds that Mrs. Henderson is granted until
midnight on March 22, 2007 (the 45th day after the Petition Date)
to obtain credit counseling from an approved credit counseling
agency, pursuant to 11 U.S.C. § 109(h)(3)(B).

B.    Mr. and Mrs. Henderson fall *substantially,* if not

11

literally, within the parameters of Section 109(h)(3)(A), as they
have both sworn to the following items relevant to their failure
to obtain prepetition credit counseling:  (a) "exigent
circumstances" (*i.e.,* imminent foreclosure on their family
homestead absent a bankruptcy automatic stay); and (b) they
sought credit counseling but were unable to obtain it until 3 to
4 days after they first tried on February 3, 2007.

<u>Ambiguity in the Statute</u>

C.  The court makes this conclusion of "substantial
compliance" for two reasons.  First, the court believes Section
109(h)(3)(A) is drafted somewhat ambiguously.[7]  The statute is
admittedly clear in that it, without a doubt, requires a debtor
to certify as to exigent circumstances and that
requests/attempts[8] were made prepetition to obtain credit
counseling, but the debtor was nevertheless unable to receive the
credit counseling prepetition.  However, what is arguably
ambiguous is the "5-day rule" in Section 109(h)(3)(A).  Does it
mean that the debtor must have diligently attempted credit
counseling *for a full 5 days unsuccessfully* before "pulling the
trigger" and filing bankruptcy?  Or could it be enough that the

---

[7] The court's analysis must always begin with the text of the
statute.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 534 (2004); *United
States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).

[8]  The statute uses the word "requested."  In the context of
Internet credit counseling, this court construes a "request" to mean
an *attempt* to log in and do the counseling on an approved website.

12

debtor simply requested/attempted the credit counseling prepetition but was nevertheless unable to get it *at a point during the course of* or *in* the 5-day period following his first request?  The latter interpretation may seem a bit of a stretch; on the other hand, why didn't Congress use the word "within" rather than "during" if it wanted to convey that a debtor must wait until it has had 5 full days of seeking credit counseling before pulling the trigger (*i.e.,* in other words, Congress could have drafted the statute to read:  debtor "was unable to obtain [the credit counseling] *within* the 5-day period beginning on the date on which the debtor made that request").  Also, consider the two alternative definitions of "during" in Webster's New Collegiate Dictionary:  "(1) throughout the duration of; (2) at a point during the course of or *IN*."  Thus, the statute is subject to two alternative interpretations due to two alternative definitions of "during":

     I.  The debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services . . . **[throughout the duration of]** the 5-day period beginning on the date on which the debtor made that request; or

     II.  The debtor requested credit counseling services from an approved nonprofit budget and credit counseling agency, but was unable to obtain the services . . . **[at a point during the course of or IN]** the 5-day period beginning on the date on which the debtor made that request.

     If the correct interpretation of Section 109(h)(3)(A) is that a debtor may qualify for a temporary waiver if the debtor

has requested/attempted credit counseling prepetition but was unable to get it **at a point during the course of** or **in** the 5-day period following the first request, then Mr. and Mrs. Henderson fit within the statute — as they requested/attempted credit counseling on February 3, 2007 and could not get it at a point during the course of February 3 through 7, 2007.

<u>But Even if the Statute is Plain and Unambiguous, the Court has Some Discretion</u>

D.    The second reason the court makes the conclusion here that there has been "substantial compliance" with Section 109(h)(3)(A), and that there are grounds to grant a temporary exemption from credit counseling, is that the court has found certain compelling authority to suggest that Section 109(h)(3) is not jurisdictional but is rather a *waivable* bankruptcy eligibility standard that a court may overlook, if no one is objecting and there are exceptional circumstances in which it may result in a manifest injustice to strictly enforce the statute. *See In re Hess,* 347 B.R. 489, 501 (Bankr. D. Vt. 2006) (noting Supreme Court precedent for the proposition that judicial discretion is warranted where strict construction of a statute would result in manifest injustice, and also noting the discretion given to bankruptcy courts, at section 707(a), when presented with "cause" for dismissal of a case).[9]    The *Hess* court

---

[9] Note that Section 109(h) does not explicitly articulate consequences for a debtor's failure to seek and obtain prepetition

set forth six factors to consider when deciding whether to
dismiss for "cause" for failure to comply with section 109(h):[10]
(a) whether the debtor filed the case in good faith; (b) whether
the debtor took all reasonable steps to comply with statutory
requirements; (c) whether the debtor's failure to comply was the
result of circumstances beyond the debtor's control; (d) whether
the debtor's conduct meets the minimum requirements of section
109(h); (e) whether any party would be prejudiced by allowing the
case to proceed; and (f) whether there are any unique equitable
factors that tip the balance in one direction or the other).  The
*Hess* court reasoned:

> The plain language of § 109(h) makes clear that, as a
> general rule, if an individual seeking bankruptcy
> relief fails to file proof of pre-petition bankruptcy

_____

credit counseling; it just describes ineligibility.  Presumably one
needs to consult Section 707(a) of the Bankruptcy Code, in connection
with Chapter 7 debtors, and Section 1307(a) of the Bankruptcy Code, in
connection with Chapter 13 debtors, for the procedure and standards
for dismissal of a consumer case where there is an ineligibility
problem pursuant to Section 109(h).  In *Hess*, where there were Chapter
7 debtors, the court consulted Section 707(a), and interpreted its
language that a "court may dismiss a case . . . for cause, including .
. ." to be further support for the notion that a court has discretion
when considering whether to dismiss a case for Section 109(h)
ineligibility.  Here, where the Hendersons are Chapter 13 debtors,
Section 1307(a) applies, and it contains the same "court may dismiss"
discretionary language as Section 707(a).

[10] This court notes, as the *Hess* court did by analogy, that courts
have exercised discretion in interpreting Section 109(g) (provision
that defines ineligibility to file bankruptcy for a person who had a
previous bankruptcy case dismissed in the preceding 180 day period,
when the debtor sought voluntary dismissal in the previous case,
following the filing of a request for relief from stay).  *E.g. In re
Luna*, 122 B.R. 575, 577 (9th Cir. BAP 1991); *In re Copman*, 161 B.R.
821, 823-24 (Bankr. E.D. Mo. 1993).

counseling and does not fulfill all of the procedural requirements for either a waiver or exemption, her bankruptcy case will be dismissed. However, when, under the totality of the circumstances, enforcing the plain language of § 109(h) would be both manifestly unjust and inconsistent with settled law interpreting related provisions of the bankruptcy code [e.g. section 707(a)], the Court may exercise its discretion, grant an exemption, deny dismissal, and allow the case to proceed.[11]

---

[11]

The *Hess* case involved two different debtors:

<u>Michael Hess</u> – Upon an order to show cause why his case should not be dismissed for apparent ineligibility for relief pursuant to section 109(h), Mr. Hess filed a motion to extend time to obtain credit counseling indicating that he had obtained credit counseling on December 14, 2005, and filed his case on March 2, 2006, under the impression he was in compliance with the credit counseling requirement. Evidence showed that the agency informed Mr. Hess's attorney that it could not issue a certificate for that December 14th session because it was not an authorized provider as of that date. The debtor attended another credit counseling session on March 13, 2006, postposition, and obtained a credit counseling certificate. The court found that the totality of the circumstances did not warrant dismissal of Mr. Hess's case because he filed his case reasonably believing that he had complied with the counseling requirement. The court found that the fact that the credit counseling agency failed to make a distinction between "regular" credit counseling and credit counseling in compliance with the new bankruptcy law, and the agency's failure to issue a certificate to the debtor were extraordinary circumstances beyond the debtor's control. The court also found that the debtor filed in good faith and attempted to comply with all requirements in good faith.

<u>Danielle Madore</u> – Ms. Madore's pro bono debtor's counsel suffered a life threatening medical event (advanced breast cancer requiring immediate surgery) at the time Ms. Madore was preparing to file bankruptcy. Ms. Madore's file, with all completed documents except the credit counseling, sat on the attorney's desk during the attorney's medical leave. The attorney's paralegal, thinking that the packet was ready to file, and unbeknownst to the debtor, filed Ms. Madore's petition and other documents, sans certificate of credit counseling. Ms. Madore took the credit counseling four days later. Ms. Madore filed a certificate of credit counseling to that effect, but the case was proposed for dismissal anyway. The court found, under the totality of the circumstances, Ms. Madore's case should not be

*Accord In re Nichols*, --- B.R. ---, 2007 WL 456635 (Bankr.

S.D.N.Y. 2007) (following the reasoning of the *Hess* case);[12] *In*

---

dismissed because "[b]ased upon the unique facts of this case and [the attorney's] dire circumstances . . . the certification the debtor filed in support of her motion for (a) an exemption from the requirement to obtain pre-petition counseling and (b) an extension of time to complete the counseling post-petition [was] statutorily sufficient." *Id*. at 500.

[12] The *Nichols* case also involved two sets of debtors:

<u>William and Ruth Nichols</u> – The Nichols, with the assistance of counsel, filed their petition on July 14, 2006, using outdated forms. They filed an amended petition on July 18, 2006, but the amended petition still contained the error of not having checked the box certifying credit counseling. And no motion for an extension of the time to file credit counseling had ever been filed. However, the Nichols did complete credit counseling on the *same day* they filed their amended petition and filed the certificate on July 20, 2006. The United States Trustee moved to dismiss because they did not receive the credit counseling during the 180 days prior to filing their petition. The Nichols were first-time bankruptcy filers. The court found that the Nichols taking credit counseling on the same day as their amended petition showed that the debtors took all steps to comply with statutory requirements, and the absence of any creditor involvement in the case to date evidenced that no party in interest would be prejudiced by allowing the case to proceed. The court laid fault heavily at the feet of counsel: "Simply, if not for the mistake of counsel, Debtors would have been in compliance with the Code. This Court finds that this fact satisfied the third and fourth elements of *Hess*. There is no reason to doubt that Debtors would have been granted a waiver if counsel filed a properly pled request. Furthermore, this Court finds that Debtors reasonably relied on their counsel to guide them through the process of preparing and filing their petition." *Id*. at *5.

<u>Laurie A. Hart</u> – Ms. Hart filed her voluntary petition and her motion to extend time for credit counseling. The court denied the motion to extend because it was unsigned and for that reason only. The court found that the motion otherwise described exigent circumstances that merited a waiver of the 109(h)(1) requirement (but the court did not set forth what those exigent circumstances were in its opinion). The court found that the debtor had taken all reasonable steps to comply with section 109 and that her motion to extend, if properly filed, would have been

17

re Kernan, --- B.R. ---, 2007 WL 39204 (Bankr. D. Conn. 2007)
(cites Hess with favor).[13]  See also In re Withers, 2007 WL
628078, *2 (Bankr. N.D. Cal. 2007) (debtor who failed to complete
credit counseling, but his case was somehow not dismissed, later
sought to voluntarily dismiss his case when the trustee wanted to
liquidate his substantial unencumbered, nonexempt real property;
the trustee asserted that section 109(h) is not jurisdictional
and that the debtor waived any right to require dismissal based
upon his own failure to comply with the eligibility requirements;
the court agreed finding that "by accepting the benefits of his
bankruptcy until it no longer suited his purposes, the debtor
waived the right to insist on dismissal based on lack of
eligibility") (citing In re Parker, 351 B.R. 790 (Bankr. N.D. Ga.
2006)).  But see In re Dillard, 2006 WL 3658485 (Bankr. M.D.Ga.
2006) (applying Hess, but finding that the totality of the

---

granted.  "In both instances, attorney error was the sole cause
of Debtors' noncompliance." Id. at *6.  The court found that the
proposition that a debtor's remedy for attorney error is against
the attorney goes to the balancing test of whether the debtor or
an adverse party may be prejudiced by the case continuing, but
"this is not an issue for consideration here, as no party would
be harmed." Id.

[13]  Ms. Kernan went to an approved credit counselor and took what
she thought was the appropriate credit counseling, but there was a
misunderstanding in that Ms. Kernan did take a credit counseling
course, but not the pre-bankruptcy credit counseling course; she
informed her attorney that she had taken credit counseling, he filed
the case on April 9, 2006, the mix up was discovered, on April 10th
she took the appropriate course from another credit counseling agency,
and she filed her certificate of credit counseling on April 11th; the
court found that the debtor had satisfied the requirements for an
exemption under section 109(h)(3).

circumstances did not warrant avoiding dismissal); *In re Ginsberg,* 354 B.R. 644, 647-48 (Bankr. E.D.N.Y. 2006) (distinguishing *Hess*; "Whereas *Hess* and *Madore* cite extraordinary circumstances beyond the debtors' control, the only justification presented here is the Debtor's attorney's failure to be aware of the credit counseling requirement."); *In re Duplessis*, 2007 WL 118945 (Bankr. D. Mass 2007) (also distinguishing *Hess*); *In re Sosa*, 336 B.R. 113 (Bankr. W.D. Tex 2005) (unlike *Hess*, not finding any discretion on the part of the bankruptcy court, and concluding, with remorse, that debtors' case was required to be dismissed due to their failure to receive prepetition credit counseling–and scolding Congress in the process).

E. Applying the *Hess* factors, which this court finds rather helpful, the court here has no reason not to conclude that (a) these Debtors filed their case in good faith; (b) they took all reasonable steps to comply with statutory requirements; (c) the Debtors' failure to comply was the result of circumstances beyond their control; (d) the Debtors' conduct meets the minimum requirements of section 109(h); (e) no party has come forth claiming prejudice by allowing the case to proceed; and (f) there are unique equitable factors that tip the balance in one direction versus the other (*i.e.,* here — unlike 99% of the debtors who seek a Section 109(h)(3) exemption — the Debtors swore that they tried repeatedly prepetition to get the credit

19

counseling with no success).[14]

F.  In a perfect world, debtors such as the Hendersons would have *specific written proof of their failed attempts to obtain credit counseling pre-petition*, such as a print out of Internet interconnection problems at approved websites on certain dates. In future cases, this court may require some form of written proof, in order to avoid any doubt and to ensure that the Section 109(h)(3) exemption does not start swallowing the rule.  After all, Congress has made clear that the idea behind credit counseling is for debtors to essentially have one final reality check before plunging into the life-changing event of bankruptcy. This court does not want debtors to think that they can take this task lightly and claim "I tried but could not do it" and will always get a 45-day pass.

G.  However, in this case, the court takes the Hendersons at their word, and believes that earnest attempts were made to obtain credit counseling.  The court believes an injustice would occur if it does not allow the case to proceed.  No creditor has come forward claiming prejudice.  The court will grant the Hendersons the temporary exemption.

---

[14]The 99% figure is this court's unscientific guess at the percentage of Section 109(h)(3) waiver requests that have come before this court which have indicated no pre-petition attempt by the debtor at requesting credit counseling.

<u>CONCLUSION</u>

In conclusion, under the narrow and unique facts of this case (*i.e.,* exigent circumstances due to an imminent foreclosure on a family homestead; evidence of diligent attempts by Debtors to get credit counseling for several days prepetition during a time when the credit counseling website may have been experiencing technical difficulties based on some anecdotal information from Debtors' counsel; miscommunication among Debtors and their lawyer regarding the Debtors' failure to obtain credit counseling before Debtors' counsel filed the case), the court holds that the Debtors qualified under Section 109(h)(3)(A) and (B) for a temporary waiver of the credit counseling requirement and are allowed the short postpetition window that Section 109(h)(3)(B) contemplates for debtors to complete their credit counseling postpetition. Mr. Henderson has already completed his credit counseling (February 6, 2007 — one day postpetition) and the court grants the Motion for Temporary Waiver as to him and determines that he has now completed the credit counseling. As previously stated, the court holds that Mrs. Henderson has through midnight on March 22, 2007, to complete her credit counseling (and she should thereafter file proof of same).

### END OF FINDINGS AND CONCLUSIONS ###